LEWIS, J.
Katherine’s Bay, LLC, Appellant, seeks review of a final order issued by the Administration Commission (“the Commission”), which adopted an administrative law judge’s (“ALJ”) holding that a small-scale development amendment (“the Amendment”) to Citrus County’s Comprehensive Plan (“the Plan”) was invalid because it rendered the Plan internally inconsistent. The ALJ and the Commission recognized two grounds for finding the Amendment inconsistent with the Plan: first, that it violated a policy in the Plan’s Future Land Use Element (“FLUE”) requiring compatibility of land uses; and second, that it violated a policy in the Plan’s FLUE requiring the County to guide future development to areas with minimal environmental limitations. Appellant challenges both grounds. As to the first ground, Appellant argues that there was a lack of competent, substantial evidence to support the ALJ’s finding that the Amendment approved a future land use designation that was incompatible with the surrounding uses. We agree. As to the second ground, Appellant argues both that there was a lack of competent, substantial evidence to support the ALJ’s factual findings and that the ALJ’s ultimate conclusion resulted from an erroneous construction of the Plan. While we do find competent, substantial evidence of the findings the ALJ made in relation to the second ground, we hold that the findings did not support the conclusion that the Amendment rendered the Plan internally inconsistent. Because the ALJ’s conclusion that the Amendment rendered the Plan internally inconsistent is not supported by either of the FLUE policies at issue, we reverse and remand to the Commission for reinstatement of the ordinance.
*22 I. Facts and Procedural History
On May 26, 2009, the Citrus County Board of County Commissioners adopted an ordinance that amended the Plan’s Generalized Future Land Use Map (“GFLUM”), which is a part of the FLUE. The Amendment changed the future land use designation of a 9.9-acre parcel of land owned by Appellant, based on Appellant’s application for such a change.
The subject property is located in a geographic region defined by Citrus County as the “Coastal Area.” According to the Plan, “[t]he Coastal Area parallels the Gulf of Mexico, and the boundary may be described as following the west side of US-19 north from the Hernando County line to the Withlacoochee River.” The Plan notes that “[t]his boundary is the basis for an environmentally sensitive overlay zone to be used for land use regulatory purposes.”
Before the Amendment, the subject property was designated Low Intensity Coastal and Lakes (“CL”), which the Plan defines in pertinent part as follows:
Low Intensity Coastal and Lakes (CL)
This land use category designates those areas having environmental characteristics that are sensitive to development and therefore should be protected. Residential development in this district is limited to a maximum of one dwelling unit per 20 acres....
In addition to single family residential development, the following land uses may be allowed provided the permitted use is compatible with the surrounding area, and standards for development are met as specified in the Citrus County Land Development Code (LDC)[:]
• Multifamily residences (in existing platted areas only or in lieu of clustering single family units at a density of one unit per lot of record and requiring the recombination of said lots. For example, a duplex requires two lots to be recombined into a single parcel, a quadruplex four lots, etc.)
• Recreational uses
• Agricultural and Silviculture uses
• Public/Semi-Public, Institutional facilities
• Home occupations
• New railroad right-of-way, storage facilities, or related structures
• Communication towers
• Utilities
• Commercial fishing and marina related uses
• Commercial uses that are water related, water dependent, or necessary for the support of the immediate population[.]
The Amendment changed the subject property’s future land use category from CL to Recreational Vehicle Park/Campground (“RVP”), which the Plan defines in pertinent part as follows:
Recreational Vehicle Park/Campground (RVP)
This category is intended to recognize existing Recreational Vehicle (RV) Parks and Campgrounds, as well as to provide for the location and development of new parks for recreational vehicles. Such parks are intended specifically to allow temporary living accommodation for recreation, camping, or travel use.
New RV parks shall be required to preserve thirty percent (30%) of the gross site area as permanent open space, consistent with Policy 17.15.11 of this Plan. *23 In addition to RV/carapsite development, the following land uses as detailed in the Land Development Code, shall be allowed provided the permitted use is compatible with the surrounding area, and standards for development are met as specified in the County Land Development Code:
• Recreational Uses
• Agricultural and Silvicultural Uses
• Public/Semi-Public, Institutional Facilities
• Convenience retail and personal services to serve park visitors and guests up to one percent of the gross site area, not to exceed 5,000 square feet, located within the development and not accessible from any external road[.]
After the Amendment changing the subject property’s future land use category from CL to RVP was adopted, Appellee, the owner of neighboring property, challenged the Amendment under the procedure set forth in section 163.3187(3)(a), Florida Statutes (2008). Appellee argued that the Amendment was not “in compliance” with the Local Government Comprehensive Planning and Land Development Regulation Act (“the Act”) because it rendered the Plan internally inconsistent. Appellee identified two policies in the FLUE, among others, that he claimed were inconsistent with the Amendment. Those policies are 17.2.7 and 17.2.8, and they provide as follows:
Policy 17.2.7 The County shall guide future development to the most appropriate areas, as depicted on the GFLUM, specifically those with minimal environmental limitations and the availability of necessary services.
Policy 17.2.8 The County shall utilize land use techniques and development standards to achieve a functional and compatible land use framework which reduces incompatible land uses.
Appellant intervened in the proceedings, and the matter proceeded to a section 120.57 hearing.
The parties stipulated that the subject property is located across the road from Appellee’s property, which is on the Homo-sassa River, and that the subject property is bordered in all directions by property designated as either CL or Coastal and Lakes Residential (“CLR”). They also stipulated that there exists on Appellant’s property a parcel designated Coastal/Lakes-Commercial (“CLC”)[1] and that this property is being used as an RV park because this use of the property is vested. Further, they stipulated that Appellee’s property was in the Coastal High Hazard Area (“CHHA”).
At the hearing, Appellee supported his argument that the Amendment rendered the subject property incompatible with the surrounding uses primarily by presenting his own testimony and that of his neighbor. Appellee described the beauty and peacefulness of the area and opined that the introduction of another RV park into the area would lead to increased traffic, litter, noise, and light pollution. He testified that the vested RV park currently existing on Appellant’s property is an “eyesore” that “looks like a bunch of junk stored on the front lawn.” Appellee also testified that, in 1993, there was a major flood in the area around his home, which was so severe that he had to tie boats to his mailbox to keep them from floating down *24 the road. He was concerned that the RV park Appellant planned to develop on the subject property would require him to manage even more debris in the event of a natural disaster. Appellee also expressed concern that the RV park would decrease his property value. A neighbor expressed the same concerns about the potential for increased traffic and decreased property values in the area.
The evidence concerning the subject property’s environmental limitations came in the form of the County Staffs report and the testimony of Dr. Timothy Pitts and Sue Farnsworth, both of whom were employed by the County as planners. The report was prepared by Dr. Pitts, who was the County’s Senior Planner of Community Development at the time. According to the County Staffs report, the subject property was studied by officials in the fire prevention, engineering, utilities, and environmental divisions. The fire prevention and engineering representatives recommended approval of the application with conditions, and the utilities representative recommended approval. The environmental planner did not recommend approval or denial but noted that the subject property was within a “Karst Sensitive Area.”[2] Additionally, the report indicated that a “traffic analysis” had revealed that “adequate capacity exists on Halls River Road for anticipated traffic at the maximum development potential of the site.” The report also noted that the subject property was within the CHHA and that it contained “significant wetland areas.” According to the report, if the application was granted, Appellant would still need to “design a Master Plan of Development that minimizes wetland alterations.”
One of the policies of the Plan that the report indicated may be cause for concern was Policy 3.18.11, which provides as follows:
The County shall protect springs by prohibiting increases in allowed land use intensity at the Generalized Future Land Use level within a Karst Sensitive Area without a hydrogeological analysis that addresses impacts to groundwater resources. The analysis shall be performed by a professional geologist or professional engineer licensed in Florida. Karst Sensitive Area shall be defined as an area in which limestone lies within five (5) feet of depth from natural grade.
In relation to this policy, the report stated that Appellant had “provided a letter from a professional engineer that adequately meets the intent of this policy” and that Appellant intended “to develop the site using methods that will meet the intent of the Comprehensive Plan.” The report also contained the following observations:
This site has some severe environmental restrictions — extensive wetlands, proximity to an Outstanding Florida Water-body, Karst sensitive landscape — and it will be difficult to design a site that meets the standards of the Comprehensive Plan and the Land Development Code. The following policy would potentially restrict development if this application were to be approved:
Policy 3.16.3 Development shall not be allowed at the maximum densities and intensities of the underlying land use district if those densities would be harmful to natural resources.
So, the applicant should be cautioned that given the environmental sensitivity of the property, development may be limited on this site to less than the allowable maximum intensity. If this *25 application is approved, an appropriately designed master plan of development will be required which meets all standards of the Comprehensive Plan and the Land Development Code and is approved by the Board of County Commissioners.
Ultimately, despite the environmental limitations, the County Staff concluded that the site was “appropriate for some type of RV Park development subject to an appropriately designed master plan.” In making this recommendation, the County Staff emphasized that, “based on the environmental limitations of the area, the applicant is cautioned that the site may not be able to be designed at the maximum intensity for this land use district.”
Dr. Pitts testified consistently with the County Staffs report. He noted that neither the Plan nor the Land Development Code (“LDC”) prohibits RV parks in either karst sensitive areas or the CHHA. He explained, however, that the County has regulations limiting the density or intensity of RV parks in such areas and indicated that the professional studies he had received on the subject property represented that the site could be developed to meet those standards. Dr. Pitts testified that, in his opinion, “just about anything west of [U.S. Highway 19] is ... karst sensitive.” Dr. Pitts acknowledged that the subject property had 1.64 acres of wetlands and that there were wetlands in the surrounding areas. He explained that the Plan requires “setbacks” to mitigate wetland impacts and that the LDC required one-hundred percent protection of the wetlands. Additionally, he explained that the regulations required fifty percent open space in the Coastal Area. Based on these regulations, Dr. Pitts testified that it was highly unlikely that Appellant would be permitted to develop the space at the maximum build-out potential theoretically allowed under the new designation, which would be five units per acre. He emphasized that, no matter what the number of approved units proved to be, complete protection of the wetlands would be required. Finally, Dr. Pitts testified that there were several vested uses in the surrounding area, including a 300- to 400-unit RV park, that did not conform to the land use designations identified for those properties in the Plan.
Farnsworth, an environmental planner for the County, testified that the wetlands were located around the perimeter of the property and that they extended into the part of the property beyond the perimeter. She explained, however, that permitting standards for an RV park prohibited the filling of wetlands and that the subject property could be developed as an RV park without the need to fill in the wetlands.
After the hearing, the ALJ issued a Recommended Order concluding that the Amendment was inconsistent with FLUE Policy 17.2.7’s requirement that future development be directed to “the most appropriate areas, as depicted on the GFLUM, specifically those with minimal environmental limitations.” In support of this conclusion, the ALJ noted the County Staffs finding that the land had “severe environmental limitations.” In particular, the ALJ noted that the area in which the subject property was located had extensive wetlands, a karst sensitive landscape, and a CHHA designation. The ALJ acknowledged that the Plan did not expressly prohibit RV parks in CHHA areas and that there were regulations in the Plan and the LDC that would limit the intensity of development on this land even under the RVP designation. The ALJ concluded, however, that “[n]otwithstanding the other provisions within the Plan and LDRs that place limitations on RV park development *26 in an effort to satisfy environmental constraints, ... the subject property is clearly not ‘the most appropriate area, as depicted on the GFLUM’ for new development, nor is it an area with ‘minimal environmental limitations.’ ”
The ALJ also concluded that the Amendment was inconsistent with FLUE Policy 17.2.8’s requirement that development be accomplished in a “functional and compatible land use framework which reduces incompatible land uses.” Because “compatible” is not defined in the Plan, the ALJ relied on the definition of “compatibility” in Florida Administrative Code Rule 9J-5.003(23). That definition is as follows:
“Compatibility” means a condition in which land uses or conditions can coexist in relative proximity to each other in a stable fashion over time such that no use or condition is unduly negatively impacted directly or indirectly by another use or condition.
In support of the conclusion that the new designation approved a land use incompatible with the surrounding uses, the ALJ noted Appellee’s testimony concerning the characteristics of the area. He also noted Appellee’s concerns about noise, lighting, litter, traffic, and property value. The ALJ further noted that there were only six nonconforming land uses and that each was permitted to exist due to vested rights. The ALJ then stated, “It is fair to infer that the insertion of an RV park in the middle of a large tract of vacant CL land would logically lead to further requests for reclassifying CL land to expand the new RV park or to allow other nonresidential uses.” The ALJ further found the following:
The commercial RV park, with a yet-to-be determined number of spaces for temporary RVs, tenants, and associated commercial development, will be in close proximity to a predominately [sic] residential neighborhood. A reasonable inference from the evidence is that these commercial uses will have a direct or indirect negative impact on the nearby residential properties and should not coexist in close proximity to one another.
Based on these findings and the determination that the Amendment was inconsistent with FLUE Policy 17.2.7, the ALJ recommended that the Commission conclude that the Amendment was not in compliance with the Act.
The Commission adopted the ALJ’s findings and conclusions, except that it modified the finding that the Amendment would “logically lead to further requests for reclassifying CL land to expand the new RV park or to allow other non-residential uses.” The Commission concluded that this finding was mere conjecture, unsupported by competent, substantial evidence. It modified the finding to read, “Unlike the presence of ... pre-existing, non-conforming uses, permitting the addition of an RV park in the middle of a large tract of vacant CL land now would set a precedent that an RV park, a Commercial Land Use, is compatible with the Low Intensity Coastal and Lakes Land Use designation in this vicinity.” Based on the adoption of the ALJ’s findings and conclusions, as modified, the Commission held that the Amendment had no legal effect.
II. Analysis
A. Standard of Review
The amendment at issue in this case was adopted under the authority of section 163.3187(l)(c), Florida Statutes (2008). Section 163.3187(3)(a) provides for review of amendments adopted under section 163.3187(l)(c) under the following terms:
The state land planning agency shall not review or issue a notice of intent for small scale development amendments which satisfy the requirements of para *27 graph (l)(c). Any affected person may file a petition with the Division of Administrative Hearings pursuant to ss. 120.569 and 120.57 to request a hearing to challenge the compliance of a small scale development amendment with this act within 30 days following the local government’s adoption of the amendment, shall serve a copy of the petition on the local government, and shall furnish a copy to the state land planning agency. An administrative law judge shall hold a hearing in the affected jurisdiction not less than 30 days nor more than 60 days following the filing of a petition and the assignment of an administrative law judge. The parties to a hearing held pursuant to this subsection shall be the petitioner, the local government, and any intervenor. In the proceeding, the local government’s determination that the small scale development amendment is in compliance is presumed to be correct. The local government’s determination shall be sustained unless it is shown by a preponderance of the evidence that the amendment is not in compliance with the requirements of this act. In any proceeding initiated pursuant to this subsection, the state land planning agency may intervene.
§ 163.3187(3)(a).
Because Appellant is challenging the Administration Commission’s final agency action in this appeal, see id., this Court’s standard of review is governed by section 120.68(7), Florida Statutes (2010). That section provides in pertinent part as follows:
The court shall remand a case to the agency for further proceedings consistent with the court’s decision or set aside agency action, as appropriate, when it finds that:
(b) The agency’s action depends on any finding of fact that is not supported by competent, substantial evidence in the record of a hearing conducted pursuant to ss. 120.569 and 120.57; however, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on any disputed finding of fact; [or]
(d) The agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action ....
§ 120.68(7).
In this Court, Appellant challenges the sufficiency of the evidence supporting the findings of inconsistency with both policies.[3] In addition, Appellant challenges the ALJ’s interpretation of the policy requiring that future development be directed toward areas of the County with minimal environmental limitations. The separate arguments concerning each policy will be addressed in turn.
B. FLUE Policy 17.2.7
With regard to FLUE Policy 17.2.7, Appellant raises two arguments: first, that *28 the ALJ erred in relying on the County Staffs finding of “severe environmental limitations” because the County Staff recommended approval of the application; and second, that the ALJ erred in failing to apply the FLUE policies that are more specific to RV parks in the Coastal Area in lieu of FLUE Policy 17.2.7, which is a general planning policy applicable to all land use decisions countywide. We agree with the second point.
i. The County Staffs Report
Appellant insists that the ALJ was required to give the County Staffs recommendation great weight. Even assuming that the County Staffs report was entitled to great weight in this case, there is no basis in the record for believing that the ALJ did not give it due consideration. To the contrary, the ALJ recited it heavily and relied on the concrete findings within it that showed the environmental limitations of the subject property, even though the ALJ disagreed with the ultimate conclusion. If an ALJ were not entitled to disagree, then the ALJ’s review would serve no purpose. To the extent Appellant argues that the recommendation of the County Staff was not given sufficient weight, this assertion is unreviewable because “[i]t is not the role of the appellate court to reweigh evidence anew.” Young v. Dep’t of Educ., Div. of Vocational Rehab., 943 So.2d 901, 902 (Fla. 1st DCA 2006). The ALJ’s finding that the subject property had severe environmental limitations was thoroughly supported by the County Staffs report. Whether those limitations required a finding that the Amendment was inconsistent with FLUE Policy 17.2.7 is, however, a separate matter.
ii. Interpretation of the Plan
Appellant’s argument that the ALJ erred in relying on a general policy in the Plan where more specific policies existed is an issue of law to be reviewed de novo. See Nassau County v. Willis, 41 So.3d 270, 278 (Fla. 1st DCA 2010). In reviewing this issue de novo, however, we bear in mind that the ALJ was required under section 163.3187(3)(a) to presume that the County’s determination that the Amendment complied with the Act (and, thus, was consistent with the Plan) was correct.
Rules of statutory construction are applicable to the interpretation of comprehensive plans. See Great Outdoors Trading, Inc. v. City of High Springs, 550 So.2d 483, 485 (Fla. 1st DCA 1989) (noting that the rules of statutory construction apply to municipal ordinances and city charters); Willis, 41 So.3d at 279 (noting that a comprehensive plan is like a “constitution for all future development within the governmental boundary”) (citation omitted). Appellant argues that this case implicates the rules of construction that specific provisions control over general ones and that one provision should not be read in such a way that it renders another provision meaningless. Both rules are well-established. See Murray v. Mariner Health, 994 So.2d 1051, 1061 (Fla.2008). Another rule of construction relevant to this issue is that all provisions on related subjects be read in pari materia and harmonized so that each is given effect. Cone v. State, Dep’t of Health, 886 So.2d 1007, 1010 (Fla. 1st DCA 2004).
Here, the ALJ concluded that the Amendment conflicted with FLUE Policy 17.2.7, which provides, “The County shall guide future development to the most appropriate areas, as depicted on the GFLUM, specifically those with minimal environmental limitations and the availability of necessary services.” (CP 10-155). Appellant contends that FLUE Policies 17.6.5 and 17.6.12, which are more specific to RV parks in the Coastal Area, indicate *29 that the Amendment was consistent with the Plan. Those policies provide as follows:
Policy 17.6.5 Specialized commercial needs, such as water-dependent and water-related uses, temporary accommodations for tourists and campers, as well as neighborhood commercial uses and services serving residential communities within the general Coastal, Lakes, and Rivers Areas shall be provided for within the Future Land Use Plan and standards for development provided within the County LDC.
Policy 17.6.12 Recreational vehicle (RV) parks and campgrounds shall be designed according to a detailed master plan, shall preserve a minimum of 30 percent of the property in open space, shall provide a minimum of an additional 10 percent of the property as recreation areas, and generally shall conform to the commercial development standards in the Land Development Code_ In order to minimize the adverse impact of development on the resources and natural features of the Coastal, Lakes, and Rivers Region, the LDC shall be amended to include additional review criteria for all new RVP projects located in this region. Such criteria may include:
• Restrictions on density
• Enhanced open space requirements
• Wetland protection
• Upland preservation
• Clustering
• Connection to regional central water and sewer service
Appellant is correct in noting that the development of new RV parks in Coastal Areas was specifically anticipated by FLUE Policy 17.6.12. This observation does not, however, mandate approval of an RVP designation for the particular parcel at issue. Thus, it was appropriate for the ALJ to resort to other portions of the Plan to determine whether approval of the RVP designation for the subject property was proper. The policy that most directly relates to this inquiry is FLUE Policy 17.2.7, which articulates the County’s general preference for guiding future development to the “most appropriate areas,” which are areas “with minimal environmental limitations.”
Two additional provisions of the Plan provide more context for the policies at issue. First, the Plan describes the “Coastal Area” as follows:
The Coastal Area parallels the Gulf of Mexico, and the boundary may be described as following the west side of US-19 north from the Hernando County line to the Withlacoochee River. This boundary is the basis for an environmentally sensitive overlay zone to be used for land use regulatory purposes....
Second, under the heading “Development in Wetland and Coastal Areas,” the Plan notes the following:
Future development in the Coastal, Lake, and River Areas will require careful management in order to reduce potential problems and impacts on the environment. Development within these areas will be limited to low, [sic] intensity uses. In addition, all development will be required to meet standards for development and obtain necessary permits from appropriate regulatory agencies.
These two provisions show that, under the Plan, the entire Coastal Area is considered environmentally sensitive, and yet “Mu-ture development” of this environmentally sensitive area is expected. Thus, when all the pertinent provisions of the Plan are considered in pari materia, the mere fact *30 that an area has environmental limitations is not a basis to prohibit development as long as the development is carried out in accordance with the limitations provided by the Plan and the LDC. Therefore, the ALJ’s finding of “severe environmental limitations” was insufficient to justify overriding the County’s determination that the Amendment was proper, particularly in light of the presumption required by section 163.3187(3)(a). The ALJ properly found the existence of wetlands and karst sensitivity in the area, but there was no competent, substantial evidence that these limitations were so severe as to require a prohibition on the development of an RV park under the restrictions that would be imposed ,by the LDC. In sum, when FLUE Policy 17.2.7 and the evidence related to that policy are viewed in the context of all relevant provisions of the Plan, the conclusion that the Amendment is inconsistent with that policy is unsupported.
C. FLUE Policy 17.2.8
With regard to FLUE Policy 17.2.8, Appellant argues that the ALJ erred in relying on the testimony of Appellee and his neighbor as a basis for finding incompatibility of the subject property’s new future land use designation with the surrounding uses. In particular, he argues that this testimony .was “unacceptable lay testimony” and that no competent, substantial evidence showed a lack of compatibility, as that term is defined by Florida Administrative Code Rule 9J-5.003(23). We agree.
Initially, we note that the reliance on the definitions provided in Florida Administrative Code Rule 9J-5.003 was proper because the Plan does not define the term “compatible,” and because section 163.3184(l)(b) defines “in compliance” in pertinent part as “consistent with the requirements of ss. 163.3177, 163.3178, 163.3180, 163.3191, and 163.3245, with the state comprehensive plan, with the appropriate strategic regional policy plan, and with chapter 9J-5, Florida Administrative Code.” Therefore, to show that the Amendment provided for an incompatible land use, Appellee was required to prove that, because of the new future land use category assigned to Appellant’s property, the land uses or conditions in the area could not “coexist ... in a stable fashion over time such that no use or condition is unduly negatively impacted directly or indirectly by another use or condition.” See Fla. R. Admin. Code 9J-5.003(23).
Lay witnesses may offer their views in land use cases about matters not requiring expert testimony. Metro. Dade County v. Blumenthal, 675 So.2d 598, 601 (Fla. 3d DCA 1995). For example, lay witnesses may testify about the natural beauty of an area because this is not an issue requiring expertise. Blumenthal, 675 So.2d at 601. Lay witnesses’ speculation about potential “traffic problems, light and noise pollution,” and general unfavorable impacts of a proposed land use are not, however, considered competent, substantial evidence. Pollard v. Palm Beach County, 560 So.2d 1358, 1359-60 (Fla. 4th DCA 1990). Similarly, lay witnesses’ opinions that a proposed land use will devalue homes in the area are insufficient to support a finding that such devaluation will occur. See City of Apopka v. Orange County, 299 So.2d 657, 659-60 (Fla. 4th DCA 1974) (citation omitted). There must be evidence other than the lay witnesses’ opinions to support such claims. See BML Invs. v. City of Casselberry, 476 So.2d 713, 715 (Fla. 5th DCA 1985); City of Apopka, 299 So.2d at 660.
Based on these standards, it was error for the ALJ to rely on Appellee’s testimony concerning potential light pollution, increased traffic, and negative impacts on *31 the value of the homes in the area. There were no facts to support his concerns, and in fact, the County Staffs report indicates that the traffic issue was studied by an expert and determined that increased traffic would not unduly burden the area.
Although it was proper for the ALJ to consider Appellee’s observations that, with the exception of the vested non-conforming uses, the area is predominantly residential and that it is peaceful, Appellee presented no competent, substantial evidence to support his claim that the new RV park would unduly interfere with those characteristics of the area. The mere fact that Appellee’s property has a different future land use designation than Appellant’s re-classified property is insufficient. See Hillsborough County v. Westshore Realty, Inc., 444 So.2d 25, 27 (Fla. 2d DCA 1983) (holding that the mere fact that property is in close proximity to another property with a less restrictive classification does not require reclassification). Additionally, while it may have been noteworthy that Appellant presently fails to maintain its vested one-acre RV park in an attractive manner, the concern that the yet-to-be-developed RV park would be maintained in the same way is speculative and does not establish long-term negative impacts stemming from the reclassification of the subject property.
In sum, based on the applicable definition of “compatibility,” Appellant’s argument that there was insufficient evidence to support a finding that the RV park was incompatible is well-taken. It appears that, in finding the proposed use incompatible with the surrounding uses, the ALJ gave undue emphasis to Appellee’s preference not to have an RV park as a neighbor. However, this preference in itself is insufficient to override Appellant’s desire to build an RV park on its land. See Conetta v. City of Sarasota, 400 So.2d 1051, 1053 (Fla. 2d DCA 1981) (suggesting that a land-use decision should not be “based primarily on the sentiments of other residents”). As a result, we hold that the ALJ erred in concluding that the Amendment was inconsistent with FLUE Policy 17.2.8.
III. Conclusion
For the reasons explained above, both of the ALJ’s ultimate conclusions as to inconsistency of the Amendment with the remaining portions of the Plan were erroneous. As a result, we reverse and remand to the Commission for reinstatement of the ordinance approving the Amendment.
REVERSED and REMANDED.
WEBSTER and MARSTILLER, JJ„ Concur.

. As provided in the Plan, the CLC category allows commercial uses that are "water related, water dependent, or necessary for the support of the immediate population,” i.e. "neighborhood commercial uses, personal services, or professional services.” This category is intended "for a single business entity on a single parcel of property.”

. According to Dr. Pitts, karst is a "limestone underground sort of rock structure that is very porous” and through which "pollutants can very easily travel.”

. In challenging the sufficiency of the evidence, Appellant argues that the ALJ did not view the evidence with an eye toward the proper standard. He contends the ALJ should have considered whether the County’s determination that the Amendment was proper was "fairly debatable,” based on the standard recognized in Coastal Development of North Florida, Inc. v. City of Jacksonville Beach, 788 So.2d 204 (Fla.2001). The argument that the ALJ applied the wrong standard is not properly before us because Appellant stood silent when Appellee argued to the ALJ that the "fairly debatable” standard did not apply and when the ALJ invited Appellant to provide contrary authority. See Dep't of Bus. & Prof’l. Regulation, Constr. Indus. Licensing Bd. v. Harden, 10 So.3d 647, 649 (Fla. 1st DCA 2009) (recognizing the preservation rule in administrative proceedings).