# Third District Court of Appeal

## State of Florida

Opinion filed September 21, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-2407
Lower Tribunal No. 13-22609
_____


**The Realty Associates Fund IX, L.P., etc.,**
Appellant,

vs.

**Town of Cutler Bay, etc., et al.,**
Appellees.


An Appeal from the Circuit Court for Miami-Dade County, Norma S. Lindsey, Judge.

Shubin & Bass, P.A., and John K. Shubin, Salvatore H. Fasulo, and Deana D. Falce, for appellant.

GrayRobinson, P.A., and Mark N. Miller (Lakeland), Kristie Hatcher-Bolin (Lakeland), and J. Michael Marshall (Boca Raton), for appellees Publix Super Markets, Inc., and GCF Investments, Inc.

Weiss Serota Helfman Cole & Bierman, P.L., and Laura K. Wendell and John J. Quick, for appellee Town of Cutler Bay.

Before ROTHENBERG, LAGOA, and LOGUE, JJ.

ROTHENBERG, J.

The Realty Associates Fund IX, L.P. ("RAF") appeals the trial court's final order dismissing RAF's complaint, which included a consistency challenge pursuant to section 163.3215(3) of the Florida Statutes. RAF alleged that Resolution 13-44 ("the development order"), which was issued by the Town of Cutler Bay ("the Town"), was inconsistent with the Town's Growth Management Plan ("the comprehensive plan") because it approved the site plan for the development of a shopping center called the "Shoppes at Cutler Bay" ("the project") even though the project did not include a residential component, as required by the comprehensive plan. Based on the following analysis, we reverse the trial court's order dismissing Count I of RAF's complaint because we conclude that: (1) the comprehensive plan is clear and unambiguous; (2) the comprehensive plan requires that the project include residential uses; (3) the project does not contain any residential uses; and thus, (4) the development order approving the project's site plan is inconsistent with the comprehensive plan.

## I. Procedural background

In March of 2013, GCF Investment, Inc. ("GCF") filed a development application with the Town seeking approval of the project's site plan and several other non-use variances that are not at issue in this appeal. In May 2013, the Town

granted GCF's development application and issued, among other things, the development order. In June 2013, RAF filed its complaint against the Town and GCF. Publix Super Markets, Inc. ("Publix") was later joined as a defendant in the proceedings after it purchased most of the subject property from GCF. Thereafter, the Town, GCF, and Publix (collectively, "the defendants") moved to dismiss RAF's complaint, arguing that RAF has failed to cite to any language in the comprehensive plan that would require the project to include a residential component.

In its written order granting the defendants' motion to dismiss, the trial court found that: (1) the project is located on a parcel of land within a Mixed Use District along the Old Cutler Road Corridor; (2) it is undisputed that the project does not include a residential component; and (3) the provisions that RAF cited to in the comprehensive plan do not require the inclusion of a residential component in the project's site plan. After the trial court entered a final judgment in favor of the defendants, RAF timely appealed.

## II. The disputed language in the comprehensive plan

RAF relies on three interrelated provisions of the comprehensive plan in support of its position that the comprehensive plan requires residential uses in new development projects located within the Old Cutler Road Corridor. First, Policy FLU-3A states that "Areas designated mixed use shall contain commercial, office,

3

residential, community, institutional and recreation and open space uses integrated vertically or horizontally, in accordance with Policy FLU-1C." Second, Policy FLU-1C states that "[t]he Town's Land Development Regulations shall conform to, and implement, the use, intensity and density standards prescribed for the land use districts provided on the Future Land Use Map, and detailed in Table FLU-1."

Lastly, Table FLU-1 depicts three columns: District, Uses, and Density and Intensity, as provided below.[1]

| District | Uses | Density and Intensity |
|---|---|---|
| **Mixed Use** | Sales and service activities, professional and clerical offices, hotels, motels, medical buildings and offices, cultural and entertainment uses, community facilities, institutional, parks and open space, and residential uses in a high quality mixed use environment. Vertical mixed use buildings are allowed in all underlying zoning districts in the Mixed Use districts, with the sales and service components being located on the ground floors and residential and office uses being located on higher floors. Horizontal mixed use development (different uses in different buildings on the same site or block face) is allowed, with specific uses determined by the underlying zoning district. Vertical mixed use buildings shall be encouraged on sites that can accommodate the mix of uses under the prescribed parameters, while horizontal mixed use development is encouraged on sites that cannot otherwise accommodate vertical mixed use. | <u>US-1 Corridor</u><br>Mix of uses, with residential uses comprising no less than 20 percent and no greater than 80 percent of the total floor area of a vertical mixed use building, and no less than 20 percent and no more than 80 percent of the buildings on a development site or block face. <u>Floor Area Ratio (FAR) of 2.5 multi-family residential at up to 75 units per gross acre.</u> Maximum building height of 72 feet, with no more than three stories, 35 feet adjacent to residentially zoned areas. Architectural features can exceed maximum height limitations.<br><u>Old Cutler Road Corridor</u><br>Mix of uses, with residential uses comprising no less than 20 percent and no greater than 80 percent of the total floor area of a vertical mixed use building, and no less than 20 percent and no more than 80 percent of the buildings on a development site or block face. Floor area ratio of 2.0, multi-family residential density at <u>30</u> units per gross acre. Maximum building height of four stories, 45 feet for the frontage and three stories, 35 feet for the remainder. Architectural features can exceed maximum height limitations.<br><u>Lakes-by-the-Bay Mixed-Use Site</u><br>Commercial, office, community facilities, and recreation open space uses that serve the surrounding residential communities. Floor Area Ratio of .5, maximum building height of two stories, 35 feet. Architectural features can exceed maximum height limitations.<br><u>Institutional Uses</u><br>Maximum FAR of .5 for Institutional uses in the US-1 and Old Cutler Road corridors, and .4 in the Lakes-by-the-Bay |

---

[1] We have only included the relevant "Mixed Use" section of Table FLU-1.

| | | Mixed-Use sites. |
|---|---|---|

The "District" column includes the broad designation of the type of use, such as "Mixed Use" or "Low Density Residential." The "Uses" column includes specific permitted uses in a given district. For example, in the "Mixed Use" district, the "Uses" column permits "Sales and service activities, professional and clerical offices, hotels, motels, medical buildings and offices, cultural and entertainment uses, community facilities, institutional, parks and open spaces, and residential uses in a high quality mixed use environment." The "Uses" column within the "Mixed Use" district also provides that vertical mixed use buildings "with the sales and services components being located on the ground floors and residential and office uses located on higher floors" are allowed and that "[v]ertical mixed use buildings shall be encouraged on sites that can accommodate the mix of uses under the prescribed parameters." Horizontal mixed use development is encouraged only on the sites that cannot accommodate vertical mixed uses.

The next column is labeled "Density and Intensity." The Density and Intensity column in Table FLU-1 is divided into subsections by area, prescribing various limits and regulations for each area. The subsection labeled "Old Cutler Road Corridor," which is the subsection at issue in this appeal, contains the following text:

5

Mix of uses, with residential uses comprising no less than 20 percent and no greater than 80 percent of the total floor area of a vertical mixed use building, and no less than 20 percent and no more than 80 percent of the buildings on a development site or block face.

RAF argues that the plain and clear meaning of this text requires that **every** new development along the Old Cutler Road Corridor be comprised of between 20 to 80 percent residential uses, and because the project's site plan undisputedly does not contain any residential uses, the development orders are inconsistent with and therefore in conflict with the comprehensive plan. Conversely, the Town, GCF, and Publix argue that the 20 to 80 percent residential use requirement is only triggered if the proposed development includes residential uses to begin with. Thus, the issue before us on appeal is whether these provisions in the comprehensive plan unambiguously require that new developments along the Old Cutler Road Corridor contain between 20 and 80 percent residential uses.

### III. Analysis of the Town's comprehensive plan

The trial court's interpretation of a comprehensive plan is reviewed de novo. Nassau Cnty. v. Willis, 41 So. 3d 270, 278 (Fla. 1st DCA 2010); Dixon v. City of Jacksonville, 774 So. 2d 763, 765 (Fla. 1st DCA 2000) ("It is well established that the construction of statutes, ordinances, contracts, or other written instruments is a question of law that is reviewable de novo, unless their meaning is ambiguous.").

"Rules of statutory construction are applicable to the interpretation of comprehensive plans." Katherine's Bay, LLC v. Fagan, 52 So. 3d 19, 28 (Fla. 1st

6

DCA 2010). However, "[w]here the words used in an act clearly express the legislative intent no other rules of construction or interpretation are necessary or warranted." Vill. of Key Biscayne v. Dade Cnty., 627 So. 2d 1180, 1181 (Fla. 3d DCA 1993). Thus, our first task is to inquire as to the plain meaning of the language in the comprehensive plan, and if the language chosen by the drafters of the comprehensive plan is clear and unambiguous, then the plain meaning of that language will control. Turnberry Invs., Inc. v. Streatfield, 48 So. 3d 180, 182 (Fla. 3d DCA 2010); Nassau Cnty., 41 So. 3d at 279 ("When the language of a statute is unambiguous, courts are bound to follow the text."). Additionally, "all provisions on related subjects [must] be read in pari materia and harmonized so that each is given effect." Katherine's Bay, 52 So. 3d at 28.

After reviewing all of the relevant provisions in the comprehensive plan, we conclude that the plain meaning of the text in Table FLU-1 is clear and unambiguous. The words "with residential uses comprising . . . no less than 20 percent" clearly demonstrate that the drafters of the comprehensive plan intended to require residential uses in all projects located within the Old Cutler Road Corridor, as the plain meaning of the phrase "no less than" indicates a floor or minimum requirement. Nothing in the text of the comprehensive plan suggests that this minimum requirement only applies if a developer chooses to include residential uses to begin with, and nothing in the text suggests that this language

7

was only limited to certain projects within the Old Cutler Road Corridor. We are bound, as is the Town, to conform to the unambiguous language of the law as it is written. See Atwater v. Kortum, 95 So. 3d 85, 90-91 (Fla. 2012) ("This Court is bound to interpret statutes as they are written and give effect to each word in the statute.") (internal citation and quotation omitted).

The defendants contend that this interpretation would lead to an absurd result because it would require that even the smallest developments include 20 to 80 percent residential uses. We disagree. First, we note that the comprehensive plan reflects that it was the Town's intent when it adopted the comprehensive plan to transform the Old Cutler Road Corridor into a town center with residences, workplaces, shops, and civic activity centers in close proximity to one another. Policy FLU-3A,[2] Policy FLU-3C,[3] Policy FLU-3D,[4] and page FLU-23 of the comprehensive plan[5] all suggest that the redevelopment of the Old Cutler Road

---

[2] "Areas designated mixed use **shall** contain commercial, office, **residential**, community, institutional and recreation and open space uses integrated vertically or horizontally, in accordance with Policy FLU-1C." (emphasis added).

[3] "The area located along the Old Cutler Road corridor and designated 'Mixed Use' on the Future Land Use Map **shall** be redeveloped as a place where **living**, working, shopping, and civic activities can take place within a town center type environment." (emphasis added).

[4] "New development and redevelopment along Old Cutler Road **shall** consist of a variety of buildings and uses that will **encourage pedestrian activity** with wide sidewalks, balconies, outdoor cafes, squares, and plazas." (emphasis added).

[5] This section, titled "Mixed Use," states that a guiding principle of the Future Land Use Element is to redevelop the Old Cutler Road Corridor in accordance with the goals set forth in the Old Cutler Road Charrette Area Plan, such as the creation of a framework that, in part, "**enhanced the livability**" of the area in a manner that

Corridor into a partly residential, pedestrian-friendly town center was of prime importance in the drafting of the comprehensive plan. Thus, the Town might reasonably have intended to require residential uses in all development projects within the Old Cutler Road Corridor in order to ensure the creation of such a town center.

Second, based on the same provisions, it is plausible that the Town intended to incentivize larger redevelopments within the Old Cutler Road Corridor, as opposed to small piecemeal redevelopment, in order to force developers to create a high quality mixed use environment, which would be in keeping with the drafters' intention to redevelop the Old Cutler Road Corridor into a town center. Thus, we find that including a residential use requirement for all new developments within the Old Cutler Road Corridor is not absurd. See Nassau Cnty., 41 So. 3d at 279 ("Courts may only legitimately rely on the absurdity doctrine without running afoul of the separation of powers . . . where it is quite impossible that [the legislative body] could have intended the result.") (citation and internal quotation marks omitted).

Of course, if the Town is dissatisfied with the language in its comprehensive plan, the Town has the power to amend its plan in accordance with sections

created a "civic district/town center and public gathering space for the surrounding area," and reintroduced "pedestrian-scale improvements in lighting and landscaping [while rebalancing] vehicular movement in the corridor." (emphasis added).

9

163.3184 and 163.3187 of the Florida Statutes. To that end, we note that a memo, written by the Town's Director of Community Development in 2010, specifically addressed what the Town believes to be the undesirable consequences of the plain language of the text in the Old Cutler Road Corridor section of Table FLU-1 we have just discussed. This memo reveals that the Town has known about the effect of the plain language in the text since 2010, but has not amended its comprehensive plan to clarify the apparently undesired text. We do not condone nor will we be party to a process of what amounts to a judicial amendment, based upon a municipality's attempt to circumvent the requirements of the legislative process that led to the adoption of the comprehensive plan by altering the plain meaning of its comprehensive plan. To do so would usurp not only the power of the Florida legislature by casting aside the laws regarding the proper comprehensive plan amendment procedure, but also the power of the municipality, whose comprehensive plan would no longer yield to the collective will of the residents of the Town, but would instead bend to the will of the judiciary. Bennett v. St. Vincent's Med. Ctr., Inc., 71 So. 3d 828, 838 (Fla. 2011) (stating that "courts are 'without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications. To do so would be an abrogation of legislative power'") (quoting McLaughlin v. State, 721 So. 2d 1170, 1172 (Fla. 1998)).

## IV. Conclusion

Because the plain and ordinary meaning of the language in Table FLU-1 of the Town's comprehensive plan requires all new development projects located within the Old Cutler Road Corridor to contain a residential use component of between 20 and 80 percent, we conclude that the development order, which approved the project's site plan even though it did not include any residential uses, is inconsistent with the Town's comprehensive plan, and we therefore reverse the trial court's order dismissing Count I of RAF's complaint as it relates to Town Resolution 13-44. Because it is undisputed that the project does not contain any residential uses, we remand for the entry of a final judgment in RAF's favor on the basis that the development order is inconsistent with the comprehensive plan. Based on this Court's ruling that the development order is inconsistent with the comprehensive plan, we decline to address RAF's arguments regarding the trial court's order as to Counts IV and V of its complaint, the trial court's order denying RAF's motion for leave to amend, and the trial court's order dismissing Counts II and III of RAF's complaint. We also find that the defendants' remaining arguments are without merit, and we decline to address them further.

Reversed and remanded with instructions.